UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

| | |
|---|---|
| Heriberto Valiente, individually and on behalf of all others similarly situated,<br><br>       Plaintiff,<br><br>    - against -<br><br>Maximus, Inc.,<br><br>       Defendant | Class Action Complaint<br><br>Jury Trial Demanded |

Plaintiff Heriberto Valiente ("Plaintiff") alleges upon information and belief, except for allegations about Plaintiff, which are based on personal knowledge:

1. Maximus, Inc. ("Defendant") provides administrative and healthcare services to the Florida Healthy Kids Corporation (Healthy Kids) to support Florida's health insurance program for children.

2. On June 12, 2023, cybercriminals accessed the personally identifiable information ("PII") and personal health information ("PHI") maintained by Defendant ("Data Breach") of Plaintiff's children.

3. The relevant PII and PHI included first and last names, addresses, account numbers, Social Security numbers, dates of birth, medical information, such as medical treatments, provider name, dates of service, diagnosis/procedures, account or record numbers, health insurance information, and/or prescriptions.

4. Though promptly aware of this breach, Defendant only notified Plaintiff of the Data Breach in a letter dated August 11, 2023 ("Breach Notice").

5. According to the Breach Notice, the unauthorized access was the result of using MOVEit Transfer, a third-party software application.

6. For several days, the PII and PHI of Plaintiff's children in the MOVEit application was exposed to and accessed by cybercriminals.

**I.    VALUE OF PII AND PHI**

7. The Federal Trade Commission ("FTC") defines identity theft as a fraud committed or attempted using the identifying information of another person without authority. 12 C.F.R. § 1022.3(h).

8. The Government Accountability Office ("GAO") concluded that identity thieves use unlawfully disclosed PII and/or PHI to open financial and healthcare accounts, receive government benefits, and incur charges and credit in a person's name.[1]

9. Identity theft is particularly harmful because it may take some time for the victim to become aware of the theft and can adversely impact the victim's credit rating.

10. In addition, victims of identity theft will face "substantial costs and inconveniences repairing damage to their credit records . . . [and their] good name."

11. Once compromised data has been sold or posted on the dark web, fraudulent use of that information may continue for years.

12. Even if persons seek to mitigate the harm of the unlawful disclosure of their PII and PHI, as security blogger Brian Krebs notes, identity protection and monitoring services will not protect people from fraud on existing financial accounts and are "not great at stopping new account fraud committed in your name."

13. One example of criminals using PII and PHI for profit is the development of "Fullz" packages.

---

[1] GAO Report, Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown.

14. Cybercriminals cross-reference multiple sources of PII and PHI to connect unregulated data available elsewhere to criminally stolen data with a complete scope and high degree of accuracy to assemble complete dossiers on individuals.

15. These dossiers are known as "Fullz" packages.

16. The development of "Fullz" packages means that stolen PII and PHI from the Data Breach can easily be used to link and identify it to Plaintiff's children and the Class's phone numbers, email addresses, and other unregulated sources and identifiers.

17. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII and PHI stolen by the cybercriminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over.

18. According to the FBI's Internet Crime Complaint Center ("IC3") 2019 Internet Crime Report, Internet-enabled crimes reached their highest number of complaints and dollar losses that year, leading to more than $3.5 billion in losses to individuals and business victims.

19. The result is that an individual's PII and PHI function as a "new form of currency" that supports a $26 billion per year online advertising industry in the United States.

20. Recognizing the high value that individuals place on their PII and PHI, companies now offer them an opportunity to sell this information to advertisers and other third parties.[2]

21. Companies have devised methods to quantify the value of PII and/or PHI on the dark web to cyber criminals.[3]

22. This gives people more power and control over the type of information that they

---

[2] T. Soma, ET AL, Corporate Privacy Trend: The "Value" of Personally Identifiable Information ("PII") Equals the "Value" of Financial Assets, 15 Rich. J.L. & Tech. 11, at *3-4 (2009).
[3] Risk Assessment Tool, Norton, 2010.

share and who ultimately receives that information.[4]

23. Surveys show that consumers place a high value on their PII and PHI in terms of protection against improper access and unauthorized secondary use.[5]

24. Individuals were estimated to value the restriction of improper access to their data at between $11.33 and $16.58 per website and prohibiting secondary use to between $7.98 and $11.68 per website.[6]

25. People place a high value not only on their PII and PHI, but also on the privacy of that data, and pay more to do business with companies conditioned upon safeguarding their PII and/or PHI.[7]

## II. HIPAA VIOLATIONS

26. HIPAA ("Health Insurance Portability and Accountability Act") circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe.

27. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.

28. HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PHI is properly maintained.

---

[4] Wall Street Journal, Web's Hot New Commodity: Privacy.
[5] New York Times, You Want My Personal Data? Reward Me for It.
[6] Hann et al., The Value of Online Information Privacy: An Empirical Investigation, Mar. 2003, at 2.
[7] Tsai, Cranor, Acquisti, and Egelman, The Effect of Online Privacy Information on Purchasing Behavior, 22(2) Information Systems Research, 254 (June 2011).

29. The Data Breach resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA.

30. Defendant's security failures include, but are not limited to:

   a. Failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

   b. Failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

   c. Failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

   d. Failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

   e. Failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

   f. Failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

   g. Failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

   h. Failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their

        functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and/or

    i. Failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

### III. INJURY AND HARM

31. Plaintiff's minor children suffered or are at an increased risk of suffering the loss of the opportunity to control how their PII and PHI are used.

32. As Plaintiff's children are minors, the responsibility and costs to address the fallout of the Data Breach will necessarily be his.

33. Plaintiff's children suffered or are at an increased risk of suffering the diminution in value of their PII and PHI.

34. Plaintiff's children suffered or are at an increased risk of suffering the compromise and continuing publication of their PII and PHI.

35. Plaintiff's children suffered or are at an increased risk of suffering out-of-pocket costs associated with the prevention, detection, recovery, and remediation from identity theft or fraud.

36. Plaintiff's children suffered or are at an increased risk of suffering lost opportunity costs and lost wages associated with the time and effort expended addressing and trying to mitigate the actual and future consequences of the Data Breach, including, but not limited to, efforts spent researching how to prevent, detect, contest, and recover from identity theft and fraud.

37. Plaintiff's children suffered or are at an increased risk of suffering delay in receipt of tax refund monies.

38. Plaintiff's children suffered or are at an increased risk of suffering continued risk to their PII and PHI, which remains in the possession of Defendant and is subject to further breaches so long as Defendant fails to undertake the appropriate measures to protect the PII and PHI in their possession.

39. Plaintiff's children suffered or are at an increased risk of suffering embarrassment, blackmail, or harassment in person or online due to the unauthorized access of their PII and PHI.

40. To protect themselves, Plaintiff's children, Plaintiff on their behalf, and the proposed Class will need to remain vigilant against unauthorized data use for years or even decades to come.

Jurisdiction and Venue

41. Jurisdiction is based on the Class Action Fairness Act of 2005 ("CAFA"). 28 U.S.C. § 1332(d)(2).

42. The aggregate amount in controversy exceeds $5 million, including any statutory or punitive damages, exclusive of interest and costs.

43. Plaintiff is a citizen of Florida.

44. Defendant is a citizen of Virginia.

45. The class of persons Plaintiff seeks to represent includes persons who are citizens of a different state from which Defendant is a citizen.

46. The members of the proposed class Plaintiff seeks to represent are more than one hundred, because the Data Breach affected thousands of Floridians.

47. Venue is in the Miami Division in this District because Plaintiff and his minor children reside in Miami-Dade County and a substantial part of the events or omissions giving rise to these claims occurred in Miami-Dade County, the provision of their PII and PHI to Defendant and knowledge it was accessed by cybercriminals.

Parties

48. Plaintiff is a citizen of Miami-Dade County.

49. As a condition of receiving medical care for his children, Plaintiff was required to disclose the PII and PHI of his children.

50. As a parent of patients, Plaintiff has rights with respect to the safeguarding of their PII and PHI.

51. Plaintiff was a beneficiary of any relationship between the vendors and Defendant.

52. Since the Breach, Plaintiff has noticed a spike in unwanted or spam emails and telephone calls, which appears now to be linked to the disclosure of information connected to his children, but which also encompasses his information, described herein, as a primary contact and caregiver for them.

53. These spam emails contain, among other things, phishing requests which aim to trick recipients into clicking on fraudulent links and entering their login credentials for a variety of online services.

54. Plaintiff must spend significantly more time and effort monitoring his email because phishing emails are designed to and do appear authentic.

55. Plaintiff, on behalf of his children, is at risk of failing to respond to legitimate emails because of the deluge of spam emails since the Breach.

56. Plaintiff, on behalf of his children, is at risk of failing to respond to legitimate calls because of the deluge of spam calls since the Breach.

57. Plaintiff and the Class suffered damages arising from the costs associated with identity theft and the increased risk of identity theft caused by Defendant's wrongful conduct.

58. Plaintiff and the Class suffered damages based on the opportunity cost and value of

time that they were and are forced to spend to monitor their financial and bank accounts because of the Breach.

59. These damages include the cost of obtaining replacement credit and debit cards and possibly other forms of legally required identification.

60. Defendant Maximus, Inc., is one of the largest providers of administrative and healthcare services in the nation.

61. The Breach was caused and enabled by Defendant's violation of its obligations to abide by best practices and industry standards in protecting personal information in its dealings with vendors.

62. Defendant grossly failed to comply with security standards and allowed PII and PHI to be compromised to save money by not adequately testing the systems it worked with.

63. On information and belief, Defendant failed to adequately train its employees on reasonable cybersecurity protocols or implement reasonable security measures, causing it to lose control over patients' PII and PHI.

64. On information and belief, Defendant is well-versed in data security matters, having previously experienced data breaches that compromised PII and PHI.

65. Maximus advised parents of patients to remain vigilant against incidents of identity theft and fraud and to monitor credit reports and financial statements for suspicious activity.

66. The Breach Notice sent to affected persons makes clear that Defendant cannot determine the full scope of the Data Breach, as it has been unable to determine exactly what information was stolen and when.

67. As a condition of providing treatment, Defendant required Plaintiff, on behalf of his children, to provide their PII and PHI.

68. Defendant then collected and maintained patients' PII and PHI in its computer systems.

69. By allowing their PII and PHI to be compromised, Plaintiff, on behalf of his children, was deprived of the full monetary value of their information in connection with their relationship with Defendant.

70. A portion of the services provided by Defendant in its dealings with Plaintiff's children necessarily included compliance with industry-standard measures with respect to the collection and safeguarding of PII and PHI.

71. By failing to provide adequate and timely notice, Defendant prevented Plaintiff's children from protecting themselves from the Data Breach by taking extra measures to guard against unauthorized access to their PII and PHI.

## Class Allegations

72. Plaintiff seeks certification of a:

> **Florida Class:** All persons in the State of Florida who were victims of the June 2023 data breach from Defendant.

73. Common questions of issues, law, and fact predominate and include whether Defendant's actions were and are negligent, reckless, misleading and if Plaintiff and class members are entitled to damages.

74. Plaintiff's claims and basis for relief are typical to other members because all were subjected to the same negligent and reckless handling and exposure of their personal information and the unfair, misleading, and deceptive representations, omissions, and actions.

75. Plaintiff is an adequate representative because his interests and those of his children do not conflict with other members.

76. No individual inquiry is necessary since the focus is only on Defendant's practices

and the class is definable and ascertainable.

77. Individual actions would risk inconsistent results, be repetitive and are impractical to justify, as the claims are modest relative to the scope of the harm.

78. Plaintiff's counsel is competent and experienced in complex class action litigation and intends to protect class members' interests adequately and fairly.

## COUNT I

### Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, *et seq.*

79. Plaintiff incorporates by reference paragraphs 1-40.

80. FDUTPA is based on Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, which prohibits unfair acts or practices.

81. The FTC has recognized that failing to employ reasonable and appropriate measures to protect against unauthorized access to PII and PHI is the type of practice that is unfair to the public.

82. Defendant failed to follow FTC guidelines to protect against unauthorized access of PII and PHI.

83. The guidelines detail how companies like Defendant should safeguard PII and PHI.

84. The guidelines also recommend that businesses watch for large amounts of data being transmitted from the system and have a response plan ready in the event of a breach.

85. The FTC recommends that companies not maintain PHI and PII longer than needed for authorization of a transaction, limit access to sensitive data, require complex passwords to be used on networks, monitor for suspicious activity and verify third-party service providers implemented reasonable security measures.

86. As a parent of patients, Plaintiff was explicitly or implicitly promised their PII and

PHI would be subjected to commercially reasonable measures of protection.

87. However, Defendant's failure to take such measures caused the PII and PHI of Plaintiff's children and the Class to be compromised.

88. Plaintiff' children lost the benefit of their bargain as a parent of patients, which did not include compensation for disclosing their PII or PHI.

89. Defendant intended that Plaintiff, his children and the class rely on its promises and commitment to safeguard their PII and PHI, on which they did rely.

90. By allowing that PII and PHI to be accessed in an unauthorized manner, Plaintiff, Plaintiff's children and the Class were misled and harmed.

## COUNT II

### Breach of Implied Contract

91. Plaintiff incorporates by reference paragraphs 1-40.

92. As a parent of patients who dealt with Defendant, Plaintiff was required to provide their PII and PHI.

93. Plaintiff, on behalf of his children, entered an implied contract and/or was a beneficiary of an implied contract between the vendors and Defendant for the adequate protection of their PII and PHI and had that PII and PHI exposed and subjected to unauthorized access and possibly misuse because of Defendant's inadequate security.

94. Plaintiff was a third-party beneficiary of any implied contract between Defendant and the vendors which it may attribute the breach to.

95. Defendant breached that implied contract by allowing unauthorized access to his children's PII and PHI.

96. In collecting and storing patients' PII and PHI, Defendant implied that it would

12

protect and maintain their data according to state and federal law and its terms and conditions and privacy policies.

97. Plaintiff and the Class would not have entrusted their private and confidential financial and personal information, and that of their children, to vendors at the wages and/or salary received if they knew it would not include the value of their compromised PII and PHI.

98. Plaintiff, Plaintiff's children and the Class suffered and will continue to suffer damages including but not limited to loss of their information and loss of money and costs incurred because of increased risk of identity theft, which is ascertainable and will be proven at trial.

## COUNT III

### Negligence and Negligence Per Se

99. Plaintiff incorporates by reference paragraphs 1-40.

100. Defendant's negligence is evidenced by its failure to recognize the Data Breach while cybercriminals had access to PII and PHI, meaning it had no effective means to detect and prevent attempted data breaches.

101. Defendant had a duty of reasonable care to safeguard the privacy, confidentiality, and security of Plaintiff's children's PII and PHI and comply with the terms of its own privacy and security policy and/or those of its vendors.

102. As a direct and proximate result of Defendant's breach of its duty of care, and as a third-party beneficiary, Plaintiff's children suffered injury.

## COUNT IV

### Unjust Enrichment

103. Plaintiff incorporates by reference paragraphs 1-40.

104. Defendant obtained benefits and monies through failing to perform adequate testing

and security protocols in connection with its operations, at financial savings to itself, at the expense of the PII and PHI of Plaintiff's children and the class, who seek restitution and disgorgement of inequitably obtained funds.

<u>Jury Demand and Prayer for Relief</u>

Plaintiff demands a jury trial on all issues.

**WHEREFORE**, Plaintiff prays for judgment:

1. Declaring this a proper class action, certifying Plaintiff as representative and the undersigned as counsel for the class;

2. Awarding monetary, statutory and/or punitive damages and interest;

3. Awarding costs and expenses, including reasonable fees for Plaintiff's attorneys and experts; and

4. Other and further relief as the Court deems just and proper.

Dated: August 27, 2023

Respectfully submitted,

/s/ William Wright
The Wright Law Office, P.A.
515 N Flagler Dr Ste P300
West Palm Beach FL 33401
(561) 514-0904
willwright@wrightlawoffice.com

*Lead Counsel for Plaintiff*

Sheehan & Associates, P.C.
Spencer Sheehan*
60 Cuttermill Rd Ste 412
Great Neck NY 11021
(516) 268-7080
spencer@spencersheehan.com

*Counsel for Plaintiff*
**Pro Hac Vice* Application Forthcoming